**Vida F. NEGRETE, as Conservator for Everett E. Ow, an individual and on behalf of all other similarly situated persons**

v.

**FIDELITY AND GUARANTY LIFE INSURANCE COMPANY, a Maryland corporation**

No. CV 05–6837CAS.

United States District Court, C.D. California.

Jan. 30, 2006.

---

Andrew S. Friedman, Elaine A. Ryan, Patricia N. Syverson, Bonnett Fairbourn Friedman and Balint, Phoenix, AZ, Evangeline Fisher Garris, Michael L. Cohen, William M. Shernoff, Shernoff Bidart Darras, Claremont, CA, Helen I. Zeldes, Rachel L. Jensen, Theodore J. Pintar, Lerach Coughlin Stoia Geller Rudman and Robbins, Howard D. Finkelstein, Mark L. Knutson, Finkelstein & Krinsk, Marisa C. Livesay, Stephen R. Basser, Barrack Rodos and Bacine, San Diego, CA, Joel A. Cohen, Shernoff Bidart Darras, Beverly Hills, CA, John J. Stoia, Jr., Lerach Coughlin Stoia Geller Rudman and Robbins, Los Angeles, CA, Michael D. Thamer, Michael D. Thamer Law Offices, Callahan, CA, for Vida F. Negrete, as Conservator for Everett E. Ow, an individual and on behalf of all other similarly situated persons.

Linda B. Oliver, Robert D. Phillips, Jr., Reed Smith, Oakland, CA, Terry B. Bates, Reed Smith, Los Angeles, CA, for Fidelity and Guaranty Life Insurance Company, a Maryland corporation.

SNYDER, District Judge.

**Proceedings: MOTION TO DISMISS DEFENDANTS FIDELITY AND GUARANTY LIFE INSURANCE COMPANY [FRCP 12(b)(6) ]** (filed December 5, 2005)

Plaintiff Vida F. Negrete [1] alleges that on September 1, 2004, defendant Fidelity and Guaranty Life Insurance Company ("F & G" or "defendant") defrauded class representative Everett E. Ow ("Ow") into purchasing a deferred annuity that matured after his actuarial life expectancy. Class Action Complaint ("Complaint") ¶ 1. Specifically, paragraph 1 of the Complaint provides:

---

1. Plaintiff is the lawfully appointed Conservator for Everett E. Ow, the class representative in this action. *See The Conservatorship of* *Everette Ernest Ow,* Superior Court of the State of California, County of Los Angeles, Case No. GP 011324.

This class action seeks to halt and remedy the harm caused by Fidelity and Guaranty Life Insurance Company's [ ] systematic unfair, fraudulent and unlawful sales practices in connection with its solicitation, offering and sale of deferred annuity products [ ] to senior citizens (65 years of age or older) in California and elsewhere in the Unites States where the date that distribution payments from the annuity commences, *i.e.*, the annuity's maturity date, is beyond the annuitant's actuarial life expectancy. A prime example of the insidious nature of F & G's sales practice can be found in defendant's annuity sale to Everett E. Ow. Specifically, Mr. Ow was 84 years old when F & G sold him a deferred annuity on September 1, 2004 that, by its terms, does not mature until 2018, when he will be 98 years old, well beyond his actuarial life expectancy at the time he purchased the annuity.

The Complaint further alleges that F & G's aggressive marketing of such unsuitable annuities to seniors arose in late 2000, after F & G abandoned internal supervisory policies limiting the issuance of annuities to seniors. Complaint ¶ 8–12. The Complaint also alleges that F & G engaged in a systematic "churning" scheme. According to the Complaint, "churning" entails the use of deceptive practices to deplete the accumulated cash value of an existing annuity. Complaint ¶ 24. Plaintiff alleges that here F & G, *inter alia,* used deceptive standard forms and other written materials to mislead prospective senior annuitants into believing that the annuity products they purchased were suitable, when they were not. Complaint ¶¶ 23–27. Similarly, plaintiff alleges that F & G had a practice and policy that its agents follow a "carefully scripted sales scheme designed to lull senior citizens into

believing that these inherently unsuitable annuities met their insurance and financial needs." *Id.* ¶ 23. The Complaint states that "churning" is prohibited by California law and the laws of other market states.[2] *Id.* ¶ 24.

Plaintiff filed suit on September 13, 2005, alleging the following claims against defendant: (1) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.* ("RICO"); (2) elder abuse under Cal. Welf. & Inst.Code §§ 15610, *et seq.* and the similar statutory enactments of all other states; (3) unlawful, unfair and deceptive business practices under Cal. Bus. & Prof.Code §§ 17200, *et seq.;* (4) unlawful deceptive and misleading advertising under Cal. Bus. & Prof.Code §§ 17500, *et seq.;* (5) breach of fiduciary duty; (6) aiding and abetting breach of fiduciary duty; and (7) unjust enrichment and imposition of constructive trust.

On December 5, 2005, defendant brought the present motion ("Mot.") to dismiss plaintiff's second and fifth claims for relief for pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff filed an opposition to defendant's motion ("Opp'n") on January 17, 2006, and on December 5, 2005, defendant filed a reply ("Reply"). Defendant's motion is presently before the Court.

## I. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. A court must not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 338 (9th Cir.1996).

---

**2.** Plaintiff's elder abuse claim is brought under California's Welfare and Institutions Code

and "similar statutory enactments of all other Market states." Complaint ¶ 7.

In considering a motion pursuant to Fed.R.Civ.P. 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998). The complaint must be read in the light most favorable to the nonmoving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). However, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Sprewell*, 266 F.3d at 988; *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (*e.g.*, facts presented in briefs, affidavits, or discovery materials). *In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir.1996), *rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.2001).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed.R.Civ.P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.2000).

## II. DISCUSSION

### A. Plaintiff's Second Claim for Elder Abuse

Defendant argues that plaintiff's claim for elder abuse must be dismissed pursuant to 12(b)(6) because F & G did not "take" or "secrete" Ow's real or personal property as required by the Elder Abuse Act. Mot. at 2.

California's Elder Abuse Act, Welfare and Institutions Code Section 15600, *et seq.*, was enacted to protect elders by providing enhanced remedies which encourage private, civil enforcement of laws against elder abuse and neglect. *Intrieri v. Superior Court*, 117 Cal.App.4th 72, 82, 12 Cal. Rptr.3d 97 (2004); *In re Conservatorship of Kayle,* 134 Cal.App.4th 1, 5–6, 35 Cal. Rptr.3d 671 (2005). Section 15610.30 of the Act provides that financial abuse of an elder occurs, *inter alia,* when a person or entity, acting in bad faith: "Takes, secretes, appropriates, or retains real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both." Cal. Welf. & Inst.Code § 15610.30(a)(1). Under the same section, a person who assists in the foregoing conduct is also liable. Cal. Welf. & Inst.Code § 15610.30(a)(2).

Defendant argues that it did not "take," "secrete," "appropriate" or "retain" Ow's funds within the "ordinary and usual" meaning of those words, and thus within the meaning of § 15610.30.[3] Mot. 3–5 (citing *Alford v. Superior Court,* 29 Cal.4th 1033, 1040, 130 Cal.Rptr.2d 672, 63 P.3d 228 (2003) (holding that where, as here, there has been no prior interpretation of a statute, trial courts should give the statute's words their "usual and ordinary" meaning)). Instead, defendant argues, Ow voluntarily entered into an annuity contract which provided benefits in exchange for premiums paid. *Id.* at 3–4. Defendant further asserts that, "Ow could have, but did not, request a withdrawal from the annuity at any time, and F & G Life would have processed those withdrawal requests and sent the requested funds to him, pursuant to the terms of the annuity contract." *Id* at 4. In sum, defendant argues that because Ow engaged in an arms length commercial transaction and at all times had access to the funds in his account, F & G did not take, secrete, appropriate, or retain Ow's funds, and thus cannot be held liable for elder abuse. *Id.* at 5.

Plaintiff argues, in response, that the complaint adequately alleges a wrongful "taking" by stratagem under § 15610.30.[4] Opp'n at 3–4. Specifically, plaintiff argues that:

[F & G's] disregard of its internal age exemption practice, resort to policyhold-er churning and use of deceptive trust mill operations as alleged in the Complaint to facilitate increased deferred annuity sales to seniors for [F & G's] financial gain to the detriment of senior annuitants is more than adequate to establish the direct or assisted "taking" of personal property to state a claim for violation of California's Financial Elder Abuse Laws.

*Id.* at 4.

The Court concludes that plaintiff's allegations are sufficient to state a claim under the Elder Abuse Act. Plaintiff alleges that F & G fraudulently acquired millions of dollars by engaging in a "churning" scheme, specifically, "using deceptive practices to deplete the accumulated cash value from existing life insurance policy or annuity (either by its surrender or, in the case of a life insurance policy, borrowing against the policy's cash value), or the sale of other asserts (such as mutual funds) and to apply that money to purchase of a new F & G deferred annuity." Complaint ¶¶ 24, 25. Plaintiff further alleges that:

[T]o facilitate their churning scheme, defendant furnished sales agents ... with information about defendant's existing senior citizen customers, including the cash value available in their already existing life insurance policies and annuities. Using deceptive and misleading specimen annuity contract, illustration(s)

---

3. Defendant states that § 15610.30 has not been addressed by a reported appellate court decision. Mot. at 2. Defendant argues that the California Supreme Court, addressing other sections of the Elder Abuse Act, has held that a plaintiff must demonstrate that a defendant's conduct was reckless, oppressive, fraudulent or malicious. Mot. at 2–3 (citing *Delaney v. Baker,* 20 Cal.4th 23, 31, 82 Cal. Rptr.2d 610, 971 P.2d 986 (1999)). Defendant argues that here, because it issued the annuity to Ow in the ordinary course of business and in accordance with California statutory and regulatory requirements, it did not engage in reckless or malicious conduct as a matter of law. *Id.* at 3.

4. Plaintiff employs the definition of "take" set forth in defendant's moving papers—"to get into one's hands or into one's possession, power or control by force or stratagem." Opp'n at 4 (quoting Webster's Third International Dictionary, Unabridged (1993)). Plaintiff cites to Merriam–Webster Online Diction (10th ed., 2005) for a definition of "stratagem"; "a cleverly contrived trick or scheme for gaining an end." *Id.* at 4.

and related pre-printed sale materials supplied by defendant, agents targeted those policyholders/annuitants with substantial accumulated cash values in their existing policies and annuities, and recommended that they acquire a new or additional annuity that would provide additional benefits or other purported improvements over their existing policy or annuity.

*Id.* ¶ 26. For purposes of Fed.R.Civ.P. 12(b)(6), these allegations are sufficient to state a claim for wrongful "taking" pursuant to Cal. Welf. & Inst.Code § 15610.30. Accordingly, defendant's motion to dismiss plaintiff's second claim for elder abuse on the basis of failure to state a claim is hereby DENIED.

## B. Plaintiff's Fifth Claim for Breach of Fiduciary Duty

Defendant argues that plaintiff's claim for breach of fiduciary duty must be dismissed because under California law an insurer owes no fiduciary duty to its insureds, particularly where, as here, the alleged breach occurred prior to contract formation. Mot. at 5–6 (quoting *Vu v. Prudential Property & Casualty Insurance Co.*, 26 Cal.4th 1142, 113 Cal.Rptr.2d 70, 33 P.3d 487 (2001) ("The insurer-insured relationship ... is not a true 'fiduciary relationship' in the same sense as the relationship between trustee and beneficiary."); *Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal.4th 394, 425–26, 58 Cal.Rptr.2d 875, 926 P.2d 1061 (1996) (holding that at the time plaintiff signed a contract with the defendant brokerage firm no fiduciary relationship had arisen)).

Plaintiff responds that California courts recognized a "special or heightened" duty owed by insurer to an insured that is fiduciary in nature. Opp'n at 5–6 (citing *Vu,* 26 Cal.4th at 1150–51, 113 Cal.Rptr.2d 70, 33 P.3d 487; *Spindle v. Chubb/Pacific Indem. Group,* 89 Cal.App.3d 706, 712, 152 Cal.Rptr. 776 (1979)). Plaintiff further asserts that when an insurer "acts as more than just and insurer, a fiduciary duty attaches to that conduct." *Id.* at 6 (citing *Twomey v. Mitchum, Jones & Templeton, Inc.* 262 Cal.App.2d 690, 708–09, 69 Cal. Rptr. 222 (1968) (finding that a broker providing investment advice owed a fiduciary duty to advisee)). Plaintiff argues that here defendant's agents held themselves out as fiduciaries by acting as financial planners and investment advisors.[5] *Id.* at 6. Accordingly, plaintiff asserts, it would be inequitable for the Court to permit "defendant to escape fiduciary responsibility by hiding behind the shield of an insurer/insured relationship."[6] *Id.* at 7.

■ In order to plead a claim for breach of fiduciary duty, the claimant must allege (1) the existence of a fiduciary relationship giving rise to a fiduciary duty, (2) breach of that duty, and (3) damage proximately caused by the breach. *Pierce v. Lyman,* 1 Cal.App.4th 1093, 1101, 3 Cal.Rptr.2d 236 (1991). Whether a fiduciary relationship exists in any given situation is a question of fact. *Michelson v. Hamada,* 29 Cal. App.4th 1566, 1575–1576, 36 Cal.Rptr.2d 343 (1994). Ninth Circuit courts, construing California law, hold that while the insurer-insured relationship is fiduciary in nature, it does not provide for an independent action for common law breach of fidu-

**5.** In support of this contention, plaintiff points to paragraph 29 of the Complaint, which provides in relevant part: "a duly appointed F & G sales agent met with Mr. Ow ostensibly for the purpose of providing financial planning advice."

**6.** Defendant asserts, in reply, that any actions by Ow's agent outside of and prior to the issuance of the annuity contract have no "bearing on the relationship between Ow and F & G." Reply at 4 (citing *Gibson v. Government Employees Insurance Co.,* 162 Cal. App.3d 441, 448, 208 Cal.Rptr. 511 (1984)).

ciary duty. *Solomon v. North American Life and Cas. Ins. Co.,* 151 F.3d 1132, 1138 (9th Cir.1998) (insurer owed no fiduciary duty to an insured as a result of their insurer-insured relationship); *Almon v. State Farm Fire & Cas. Co.,* 724 F.Supp. 765 (S.D.Cal.1989); *Kanne v. Connecticut General Life Insurance Company,* 607 F.Supp. 899 (C.D.Cal.1985), *rev. on other grounds,*859 F.2d 96 (9th Cir.1988) ("California law does not recognize an action for breach of fiduciary duty between an insured and an insurer."); *cf. Twomey v. Mitchum, Jones & Templeton, Inc.* 262 Cal.App.2d 690, 708–09, 69 Cal.Rptr. 222 (1968).

■ The Court concludes plaintiffs allegations are sufficient to state claim for common law breach of fiduciary duty against defendant, in that the relationship alleged is not simply that of an insurer-insured, but rather one which may entail a fiduciary duty. Specifically, plaintiff alleges that:

> By virtue of their purported positions as financial advisors, estate planning specialists, and because of their superior knowledge and ability to manipulate and control senior citizens' finances and legal status, the [managing general agents] and the [national marketing organizations], owned, operated and/or controlled by defendant who marketed and sold F & G annuities to senior citizens assumed fiduciary duties to Mr. Ow and the class.

Complaint ¶ 100.[7] Because the Court must accept all allegations as true and construe those allegations in a light most favorable to plaintiff at this stage of the proceedings, the Court cannot say with certainty that "plaintiff can prove no set of facts" entitling him to relief on a breach of fiduciary theory. *See Michelson v. Hamada,* 29 Cal.App.4th 1566, 1575–1576, 36 Cal. Rptr.2d 343 (1994); *Committee On Children's Television, Inc. v. General Foods Corp.,* 35 Cal.3d 197, 222, 197 Cal.Rptr. 783, 673 P.2d 660 (1983) ("[I]n an exceptional case a court might be able to find that a close and trusting relationship between buyer and seller, in which the buyer relied on the seller and the seller recognized that reliance, justified imposing fiduciary duties."); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 338 (9th Cir.1996). The Court therefore DENIES defendant's motion to dismiss plaintiff's fifth claim for breach of fiduciary duty.

## III. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is hereby DENIED.

IT IS SO ORDERED

---

7. The Court notes that plaintiff's allegations may pertain not only to F & G's allegedly wrongful conduct occurring prior to issuance of an annuity, but also to conduct occurring after issuance of an annuity. *See, e.g.,* Complaint ¶¶ 23–27. Accordingly, the Court finds defendant's reliance on *Rosenthal v. Great Western Fin. Securities Corp.* unavailing. *See* 14 Cal.4th 394, 425–26, 58 Cal.Rptr.2d 875, 926 P.2d 1061 (1996) (holding that no fiduciary relationship arises between broker and plaintiff prior to entering into a contract).